THE PEOPLE, *ex rel.* The Board of Supervisors of Kings County, *vs.* THE COMMISSIONERS OF PROSPECT PARK IN THE CITY OF BROOKLYN.

By an act of the legislature, land was set apart " as a parade ground for the county of Kings," and declared to be a " public place." Provision was made for acquiring the title thereto by the Commissioners of Prospect Park in the city of Brooklyn, and for assessing the damages of the owners; and it was declared that the lands, when taken, should be the property of said county, " as and for a parade ground," but should be under the exclusive charge and management of such commissioners " for the purposes of police and improvement as such parade ground."

*Held,* 1. That it was the intention of the statute that the grounds should be acquired, not merely for a public place and parade for the use of Kings county, but for the general purpose of military parades.

2. That the provision of the statute placing the land under the exclusive charge and management of the commissioners of Prospect Park, "for the purposes of police and improvement as such parade ground," so far restricted the general sense and meaning of the terms "public place" and "parade ground," as to render the public use of the ground as a parade ground subject to the police regulations which might be properly adopted by the commissioners.

3. That within the lawful exercise of that authority, the commissioners might exclude from the ground such military organizations as in their judgment could not be safely intrusted with its use and enjoyment.

4. That under the authority to establish rules and regulations for police and improvement, the commissioners were invested with a sound discretion as to the military organizations which could be safely and judiciously intrusted with the use of the grounds; leaving them at liberty, in the discreet exercise of their powers, to admit such as would properly use, without abusing, the grounds, and to exclude from them such as they might believe could not be safely or prudently admitted to the enjoyment and use of them, without endangering their condition, or disturbing the good order and security of the neighboring inhabitants.

5. That if this discretion should be improperly made use of, or be perversely abused, the remedy for its correction was not by means of the writ of *mandamus,* but by direct measures for the removal of the commissioners, or for punishing them, in case they should intentionally and willfully omit to discharge the duties imposed upon them by law.

THE relator, upon an affidavit and notice, applied to a special term of this court held at the city of Brooklyn, for a peremptory mandamus directing the defendants to

exclude from the parade ground of the county of Kings, all organizations existing outside of that county, and to confine and limit its military use to the organized national guard of that county. In support of the application it was shown that the commissioners had consented to allow such grounds, during the present and the next ensuing years, to be used by the national guard of the city of New York, comprising the whole of four brigades, and that it would be so used unless prevented by operation of law. It was also shown that the parade ground was acquired by the county of Kings under chapter 852 of the laws of 1866; and that the supervisors of that county had, by res-olution, directed that such ground ought not to be used by military organizations outside of the county, and that the law committee take measures for preventing the use of such grounds by military organizations outside of Kings county. The mandamus was ordered by the court, and from the order awarding it the commissioners appealed.

*Joshua M. Van Cott,* for the appellants.

*Phillip S. Crooke,* for the respondent.

*By the Court,* DANIELS, J. By the express language of section seven of the act under which the parade ground in controversy was acquired, it became, upon its acquisition, the property of the county of Kings. And by section one of the same act, the title was vested in that body, as a parade ground for that county. But nothing beyond that, and the fact that it was to be paid for by that county, was inserted in the act, from which it could be presumed to have been intended that the use of the ground should be exclusively appropriated to the military organizations of that county. It could very well be the property of that county, and a parade ground for it, without being confined to the use of its own military organizations. Whether it

should be so used, or could be used in common by such organizations, and those of other counties, it would still, without impropriety, be designated as a parade ground for the county of Kings. For as long as it was to be paid for by it, and the title was to become vested in it, the ground was strictly and literally a parade ground for that county, when it was afterwards acquired under the provisions of the statute. The terms made use of may be as appropriately satisfied by confining them to this signification as the sense of similar terms may be, when used for the designation of the streets, squares, parks and other public grounds acquired, laid out and preserved for the respective cities and villages of the State. They are, strictly speaking, the streets and grounds of the city or village in which they may be situated. But nevertheless, from their nature and objects, they may still be used by all persons having occasion for such use, whether they are residents or citizens of the municipality maintaining them, or not. The right to make such use of them results from the circumstance that they are created for the enjoyment of that use. They are for the convenience, recreation and benefit of the public; and every member of it, appropriately using them for those purposes, is legally entitled to do so. In this respect the act referred to does not materially differ from other statutes providing for the creation and maintenance of public grounds. For while the ground in controversy was to be, and was, acquired for a parade ground, and from its nature should be exclusively devoted to that object, there is still nothing in the act requiring that the military organizations existing outside the county of Kings should be perpetually excluded from its use and enjoyment. On the contrary, the first section of that act declares that the parade ground, although procured for the county of Kings, should be a public place, and the seventh section, with nearly equal explicitness, provides that it shall be the property of the county for a parade ground; not that it shall

be a public place, and a parade ground, for the exclusive use of the military organizations of the county, but for such uses as the popular signification of those terms may be fairly and reasonably understood as including. For as those words have acquired no legal signification differing from that popularly given to them, it must be presumed that they were used in that sense by the legislature, in the present instance. And if they were, then their plain import would appear to indicate that the grounds were intended to be acquired for the general purposes of military parades. The object of acquiring them must have been the promotion of the efficiency and discipline of the military organizations of the State, so far as they might prove to be conveniently accessible to them. This is fairly disclosed by the provisions already referred to, by which the land is declared to be a public place and a parade ground; not a public place and parade ground for the mere use of Kings county, but according to the fair meaning and import of those words; for they were made use of in a general sense, and without the disclosure of any purpose or design to limit or restrict their signification beyond that to be derived from the circumstance that the ground was to be under the exclusive charge and management of the Prospect Park commissioners for the purposes of police, as such parade ground.

This provision so far restricts the general sense and meaning of those terms as to render the public use of the ground as a parade ground subject to the police regulations which may be properly adopted by the commissioners. And within the lawful exercise of that authority they may exclude from it such military organizations as in their judgment could not be safely intrusted with its use and enjoyment. For, by that authority, they have been empowered to adopt and ordain such reasonable, prudential and wholesome regulations and ordinances as they may judge to be necessary or expedient for the protection

and preservation of the grounds subjected to their government, to maintain decorum and good order and promote the objects designed to be accomplished in acquiring them. This is the nature and character of a police power. (*Com.* v. *Alger*, 7 *Cush.* 53, 85, 86.) And by section 7 of the act referred to, that power was delegated to these commissioners over the land appropriated to the creation of this parade ground.

Under this authority the commissioners were invested with a sound discretion as to the military organizations which could be safely and judiciously intrusted with the use of these grounds. Leaving them at liberty, under the discreet exercise of their powers, to admit such as would properly use without abusing the grounds, and to exclude from them such as they might believe could not be safely or prudently admitted to the enjoyment and use of them, without endangering their condition, or disturbing the good order and security of the neighboring inhabitants.

If this discretion should be improperly made use of, or be perversely abused, the remedy for its correction is not by means of the writ of *mandamus,* which is strictly confined to the enforcement or protection of rights not dependent upon the use of discretionary authority, but by direct measures for the removal of the commissioners, or for punishing them, in case they should intentionally and willfully omit to discharge the duties imposed by law upon them. No reason exists, in the present instance, for supposing that either of those remedies even will ever become necessary for the protection of this property, or of the public. But if they should, the writ of *mandamus* will afford no means by which they can be enforced.

The order appealed from should be reversed, with costs, and an order entered denying the motion made by the relator.

[SECOND DEPARTMENT, GENERAL TERM, at Poughkeepsie, June 14, 1870. *J. F. Barnard,* P. J., and *E. D. Smith* and *Daniels,* Justices.]